IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS MORGANTI,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,[1]<br><br>　　　　Defendant. | No. C 12-03511 CRB<br><br>**ORDER REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

In this Social Security case, Petitioner Douglas Morganti seeks an order from this Court reversing the Commissioner of Social Security's final decision to deny disability benefits. See MSJ (dkt. 17). As explained below, because the ALJ failed to provide specific and legitimate reasons for discrediting Morganti's treating physicians' opinions, and did not provide specific, clear and convincing reasons for discrediting Morganti's symptom testimony, the Court affirms in part and remands for further clarification or development of the record.

//
//
//

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013, and is therefore substituted for Michael Astrue as the Defendant in this action. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d). This Order refers to Colvin as the "Commissioner."

## I. BACKGROUND

Morganti was hospitalized in June 2008, complaining of generalized symptoms of weakness, anorexia, lightheadedness, and profound weight loss. MSJ at 2; Administrative Record ("AR") at 243. Morganti was in the hospital for ten days, during which time his attending physicians performed blood tests, CT scans, EKGs, physical examinations, a bone marrow biopsy, a tonsil removal, X-rays, and other relevant medical tests to determine the cause of Morganti's symptom. See AR at 243-273. Upon discharge, Morganti received multiple diagnoses, including, leukopenia,[2] anemia, and acute renal failure. Id. at 243. After his release, Morganti continued to see Robert W. Weber, M.D., a hematologist, who diagnosed him with autoimmune neutropenia and an anxiety disorder. See id. at 486-87. Morganti's primary care physician, Carl Bricca, M.D., also diagnosed him with autoimmune neutropenia, as well as major depression and anemia. See id. at 482. Morganti began seeing Mark Heitner, M.D., M.B.A., a psychiatrist, on April 22, 2010, who diagnosed him with major depression. Id. at 490.

Morganti filed for Disability Insurance Benefits on April 21, 2009, alleging disability since June 17, 2008. Id. at 44. The Social Security Agency (SSA) denied his application for benefits initially on October 24, 2009, and on reconsideration on March 23, 2010. Id. at 63, 72. Morganti filed a written request for hearing on April 7, 2010, and appeared with counsel at a hearing in front of ALJ Charles D. Reite on October 26, 2010. Morganti, Robert Sklaroff, M.D., an impartial medical expert, and Diana L. Wong, an impartial vocational expert, testified at the hearing. Id. at 49. The ALJ evaluated Morganti's claim according to

---

[2] Leukopenia and neutropenia are often used synonymously. See Dale Starkbaum, Autoimmune Leukopenia, http://www.neutropenia.ca/about/types-of-neutropenia/autoimmune-leukopenia. Both are disorders involving cell destruction and reduced white blood cell count. Id.

2

the five-step sequential process developed by the Social Security Administration.[3] See 49-58; 20 C.F.R. § 404.1520(a).

In his written decision dated February 3, 2011, the ALJ addressed each of these steps in turn. AR at 49-58. At Step One, the ALJ determined that Morganti had not engaged in substantial gainful activity at any time relevant to his decision. Id. at 51. At Step Two, the ALJ found that Morganti suffers from "cyclic leucopenia." Id. The ALJ considered this impairment to be severe, id., meaning that it "significantly limit[s] [one's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c). However, the ALJ found that Morganti's depression and anxiety disorders were not severe, either individually or in combination. AR at 51. At Step Three, the ALJ determined that Morganti's medically determinable impairments, alone or in combination, did not meet or medically equal the criteria of any section of the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 for the requisite period. At Step Four, the ALJ determined that Morganti has the residual functional capacity to perform light work that requires no more than mild concentration, persistence, or pace, and at Step Five, he found that Morganti is capable of performing his past work as an activity director and dispatcher. Id. at 53-57. Based on these conclusions, the ALJ found that Morganti had not had a disability during the relevant period. Id. at 57.

---

[3] In the first step, the ALJ must determine whether the claimant is currently engaged in substantially gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not so engaged, the second step requires the ALJ to determine whether the claimant has a "severe" impairment which significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ concludes that the claimant does not have a "severe" impairment, the claimant is not "disabled" and the claim is denied. Id. If the claimant does have a "severe" impairment, the third step requires the ALJ to determine whether the impairment meets or equals the criteria of an impairment listed in the relevant regulation. 20 CFR § 404, Subpt. P, App. 1; 20 C.F.R. § 416.920(a)(4)(iii). In the fourth step, the Commissioner must determine whether the claimant has sufficient residual functional capacity (RFC) to perform his or her past work. 20 C.F.R § 416.920(a)(4)(iv). If so, the claimant is not "disabled" and the claim must be denied. Id. The claimant has the burden of proving that he or she is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, he or she has presented a prima facie case of disability. Id. In the fifth step of the analysis, the burden shifts to the Commissioner to establish that the claimant can perform other substantial gainful work. 20 C.F.R. § 416.920(a)(4)(v). If the Commissioner fails to meet this burden, the claimant must be found disabled. Id.

3

Morganti requested review of the SSA's determination and the Appeals Council denied his request on May 17, 2012. Id. at 1.  Morganti now requests judicial review of the SSA's decision under 42 U.S.C. § 405(g) of the Social Security Act.

This case focuses on Steps Two and Four: (A) whether Morganti's depression and anxiety disorders are "severe" impairments, and (B) whether Morganti has sufficient residual functional capacity (RFC) to perform his past work.

### A.     Determination of Non-Severe Limitations

The ALJ found that Morganti's depression and anxiety disorders were "non-severe" impairments for two main reasons.  First, the medical evidence showed that Morganti's depression improved with medication and that he was tolerating his medication well. Id. at 51.  Second, Morganti's treating physician described his depression as mild and indicated that Morganti was able to sleep six hours at night. Id.  The ALJ concluded that Morganti's depression and anxiety did not cause more than "minimal functional limitations," and were therefore "non-severe" limitations. Id.

### B.     Determination of Residual Functional Capacity

In determining Morganti's residual functional capacity, the ALJ found that Morganti's medical impairments could reasonably be expected to cause his alleged symptoms, but that his statements as to the "intensity, persistence and limiting effects" of his symptoms were not credible to the extent that they were inconsistent with the ALJ's "above residual functional capacity assessment." Id. at 55.  The ALJ then stated that, "[i]n general, [he] finds [Morganti] credible but the laboratory reports reviewed by the medical expert indicate a lack of acute incidents and thus make the medical expert's opinion more credible." Id.

The ALJ credited the opinions of two non-treating, non-examining medical experts, Dr. Skarloff, and S. Mathur, M.D., as well as the opinion of an examining consultive examiner, Raymond Yee, M.D. Id. at 56.  Dr. Skarloff testified that Morganti has leucopenia, but that it is "not something that is severe" or "life-threatening," and that cyclic leucopenia, while predisposing Morganti to infection, does not cause fatigue. Id.  The ALJ gave full weight to the opinion of Dr. Skarloff because "he has an awareness of the evidence

4

in the record, he has an understanding of social security disability programs and evidentiary requirements," and because "his opinion is reasonable and credible because the medical record lacks laboratory and/or clinical findings supporting severe functional limitations." Id. He also gave "some weight" to the opinion of Dr. Mathur, a non-examining physician, who opined that Morganti "could lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently," and "can sit, stand and/or walk about 6 hours in an 8-hour workday." Dr. Yee opined that Morganti was psychiatrically stable, was able to perform simple and complex tasks, could be expected to accept instructions form supervisors and interact with the public and coworkers, and could be expected to complete a workday without interruptions from his psychiatric condition. Id. at 57. The ALJ gave Dr. Yee's opinion "substantial weight" because "it is consistent with the medical record," but found that Morganti's subjective complaints indicated that he had a mild deficit in his ability to concentrate. Id.

The ALJ afforded "little weight" to the opinions of Morganti's treating physicians, Dr. Weber and Dr. Bricca. Id. at 56. Dr. Weber found that Morganti's symptoms prevented him from walking more than one block and that he could sit or stand in fifteen minute intervals for a total time of less than two hours in an eight hour working day. Id. Dr. Weber concluded that as a result of his autoimmune neutropenia, Morganti could occasionally lift ten pounds, rarely twenty, he was likely to miss more than four workdays per month, and that he would need to avoid exposure to sick individuals. Id. Dr. Bricca found that Morganti suffered episodic neutropenia, which responded to high doses of prednisone, that he was able to work for about four hours with the need to take unscheduled breaks for fifteen minutes at a time, and that he needed to shift positions from sitting, standing or walking. Id. Additionally, Dr. Bricca opined that Morganti would likely be absent from work more than four days per month. Id. After reciting Morganti's treating physicians' opinions, as reported on their respective residual functional capacity assessments, the ALJ stated that he "affords [each] opinion little weight" because "it is not supported by the objective findings and it is inconsistent with the medical expert's opinion." Id.

5

Relying on "the medical expert's opinion, the consultative examiner's opinion, and the medical evidence of record," the ALJ found that Morganti was able to preform light work. Id. at 57.

## II.     LEGAL STANDARD

A district court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The record as a whole, including the evidence that supports and the evidence that detracts from the Commissioner's conclusion, must be considered. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

The court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989) (citing Jones, 760 F.2d at 995). However, if substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, and may be set aside only if an improper legal standard was applied in weighing the evidence. See Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002); see also Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

Summary judgment is a method for disposing of an action in which there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56. The burden of establishing the lack of a genuine issue of material fact is on the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder

6

1  to find for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
2  248-49 (1986).  A fact is "material" if it could affect the outcome of the case.  See id. at 248.
3  All inferences to be drawn from the underlying facts must be viewed in the light most
4  favorable to the nonmoving party.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,
5  809 F.2d 626, 630 (9th Cir. 1987).  "The district court need not examine the entire file for
6  evidence establishing a genuine issue of fact, where the evidence is not set forth in the
7  opposing papers with adequate references so that it could conveniently be found."  Carmen v.
8  S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

## III.    DISCUSSION

Morganti argues that the ALJ's decision should be reversed because (A) it mistakenly characterized Morganti's depression and anxiety disorders as "non-severe"; (B) it did not provide a sufficient basis for rejecting the opinions of Morganti's treating physicians; (C) it did not afford the proper weight to Morganti's testimony regarding his daily activities; (D) it improperly disregarded lay evidence from Morganti's wife, father and sister; (E) it improperly found that Morganti was able to perform his past work; and (F) the Appeals Council failed to consider additional evidence submitted by Morganti.  The Court addresses these arguments now, but does not reach Morganti's final three arguments regarding lay evidence, Morganti's ability to perform work, and the additional evidence submitted to the Appeals Council, because the Court finds remand proper on other grounds.  However, on remand, the ALJ should consider all of the evidence in the record, including the lay evidence and the additional evidence Morganti submitted to the Appeals Council.

### A.    Substantial Evidence Supports the ALJ's Determination that Morganti's Anxiety and Depression Disorders are Non-Severe Impairments

Morganti argues that the ALJ erred in finding that his depression and anxiety disorders are "non-severe" limitations.  MSJ at 9.  He asserts that the ALJ relied on portions of a letter from Morganti's treating psychiatrist, Dr. Heitner, stating that Morganti's psychiatry disorders were "mild" and that he was "tolerating his medications well," to the exclusion of other statements in the same letter indicating that Morganti's depression was a

7

burden. Id. Additionally, Morganti aruges that the ALJ failed to discuss Dr. Weber's and Dr. Bricca's diagnoses of depression, anxiety, and insomnia. Id.

The ALJ recognized Morganti's history of depression and anxiety disorders, but concluded that the medical evidence did not indicate that such disorders were "severe." AR at 51. While Morganti is correct that the ALJ focused on statements in Dr. Heitner's letter that supported his conclusion of non-severity, and did not rely on the opinions of doctors Weber and Bricca, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." See Tommasetti v. Astrue, 553 F.3d 1035, 1041 (9th Cir. 2008). Additionally, all three doctors, Heitner, Weber and Bricca, are treating physicians, and it is proper for an ALJ to afford more weight to a specialist's opinion than the opinions of other doctors who are not specialists. See 20 C.F.R. 404.1527(c)(5) ("Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). For anxiety and depression disorders, a psychiatrist is a specialist. Furthermore, the ALJ found that Morganti's depression improved with medication, and it is well accepted that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Although the evidence with regard to Morganti's anxiety and depression disorders is susceptible to more than one rational interpretation, the ALJ relied on substantial evidence to support his interpretation that these disorders are non-severe, and therefore, the Court must affirm this aspect of his decision. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The Court therefore affirms this aspect of the ALJ's decision.

**B. The ALJ Did Not Provide Specific and Legitimate Reasons for Discrediting Morganti's Treating Physicians' Opinions Regarding Neutropenia Symptoms**

Morganti next contends that the ALJ did not properly credit the medical opinions of two of his treating physicians, Dr. Weber and Dr. Bricca. MSJ at 8. Dr. Weber, Morganti's

1  treating hematologist since his hospitalization, concluded that Morganti suffered from
2  autoimmune neutropenia, with symptoms including fatigue, recurrent infections, myalgia,
3  and weakness. AR at 486. He also found that Morganti suffered from anxiety. Id. at 487.
4  Dr. Bricca, Morganti's primary care doctor, found that Morganti suffered from neutropenia,
5  anemia, and major depression, with symptoms including chronic lethargia, episodic
6  pharangitis, night sweats, frequent insomnia, and a depressed mood. Id. at 482-83.

7  In the Ninth Circuit, courts "distinguish among the opinions of three types of
8  physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but
9  do not treat the claimant (examining physicians); and (3) those who neither examine nor treat
10 the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).
11 "A treating physician's opinion is entitled to more weight than that of an examining
12 physician, and an examining physician's opinion is entitled to more weight than that of a
13 nonexamining physician." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). Even if the
14 treating physician's opinion is contradicted by another physician, the ALJ may not reject the
15 treating physician's opinion without providing "specific and legitimate" reasons for doing so
16 that are supported by substantial evidence in the record. Id. at 632. "The ALJ can meet this
17 burden by setting out a detailed and thorough summary of the facts and conflicting clinical
18 evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799
19 F.2d 1403, 1408 (9th Cir. 1986); see also Orn, 495 F.3d at 632.

20 In this case, the ALJ rejected the opinions of Doctors Weber and Bricca, Morganti's
21 treating physicians, without providing specific and legitimate reasons supported by
22 substantial evidence in the record. After merely reciting parts of the medical evidence in the
23 record and the information provided by Doctors Weber and Bricca on their respective RFC
24 questionnaires, the ALJ summarily dismissed their opinions, affording them "little weight"
25 and concluding that they were (1) "not supported by the objective findings" and (2)
26 "inconsistent with the medical expert's opinion." AR at 56.

27 Merely stating that a treating physician's opinions are not supported by objective
28 findings is insufficient. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say

9

that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required."). When disregarding a treating physician's opinion, an ALJ must provide specific, legitimate reasons for doing so, including a thorough summary of the facts, his interpretations thereof, and his findings. See Cotton, 799 F.2d at 1408. The ALJ here failed to provide any interpretation of the objective medical evidence, and did not explain what specific objective findings fail to support the opinions of Doctors Weber and Bricca. The ALJ's conclusory statement that Morganti's treating physicians' opinions are not supported by objective findings surely cannot be called "specific." See Embrey, 849 F.2d at 422.

Furthermore, rejecting Morganti's treating physicians' opinions simply because they are "inconsistent" with a non-examining physician's opinion is not a legitimate and specific reason. The Ninth Circuit has emphasized that a treating physician's opinion is entitled to more weight than the opinions of both examining and nonexamining physicians, and to allow an ALJ to discredit a treating physician's opinion simply because it is inconsistent with a nonexamining physician's would undermine this well established rule. See Embrey, 849 F.2d at 421 ("We have made it clear that the medical opinions of a claimant's treating physicians are entitled to special weight and that, if the ALJ chooses to disregard them, he must set forth specific legitimate reasons for doing so, and this decision must itself be based on substantial evidence."); see also Orn, 495 F.3d at 631.

Moreover, the ALJ has failed to establish that the opinion of Dr. Skarloff, a nonexamining physician, constitutes substantial evidence. The opinion of a nontreating physician that is based on "independent clinical findings that differ from those of the treating physician" may be substantial evidence. Andrews v. Shala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence; or (2) findings based on objective medical tests that the treating physician has not considered. Orn, 495 F.3d at 632. However, where a nontreating physician's opinion contradicts that of a treating physician but is not based on

1  independent clinical findings, or relies on clinical findings also considered by the treating
2  physician, the treating physician's opinion may be rejected only if the ALJ provides specific,
3  legitimate reasons for doing so that are based on substantial evidence in the record.
4  Andrews, 53 F.3d at 1041 (9th Cir. 1995).

   Dr. Skarloff's opinion was not based on independent clinical findings, as he did not
examine, treat, or conduct any testing on Morganti, and he provided the same diagnosis as
Morganti's treating physicians, leucopenia.  AR at 55; see Andrews, 53 F.3d at 1041.  While
a nonexamining medical expert's opinion may constitute substantial evidence when it is
consistent with other independent evidence, Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th
Cir. 2001), the ALJ here failed to point to such independent evidence.  Instead, he provided a
blanket statement that Dr. Skarloff's opinion is credible because the "medical record lacks
the laboratory and/or clinical findings supporting severe limitations," without pointing to any
particular evidence to support his contention.[4]  The ALJ also relied on another nonexamining
expert's opinion, Dr. Mathur's, but this opinion does not alone, or in combination with Dr.
Skarloff's opinion, rise to a level of substantial evidence that would support the ALJ's
finding.  See Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("The nonexamining
physicians' opinions, with nothing more, does not constitute substantial evidence,
particularly in view of conflicting observations, opinions, and conclusions of an examining
physician.").  The ALJ himself recognized that "[because] Dr. Mathur is non-examining, his
opinion does not, as a general matter, deserve as much weight as those of examining or
treating physicians."  AR at 56.  It is unclear to the Court why the ALJ came to a different
conclusion as to Dr. Skarloff.

   The ALJ failed to give specific, legitimate reasons, supported by substantial evidence,
to discredit the testimony of Morganti's treating physicians, Dr. Weber and Dr. Bricca, in
favor of the testimony of a nonexamining physician, Dr. Skarloff.  The decision of whether

---

[4] To be clear, earlier in his opinion, the ALJ provided a summary of some of the medical evidence in the record.  See AR at 54.  However, it is impossible for the Court to discern what evidence the ALJ relied on in crediting Dr. Skarloff's opinion.  The opinion contains no explanation of the objective evidence and appears to include information irrelevant to Morganti's claims.  See, e.g., id. ("Megakaryocytes were identified." and "Mild scoliosis of the spine is noted.").

11

1  to award benefits or remand for further proceedings is within the discretion of the court. See
2  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Remand is proper where, as here,
3  additional proceedings may remedy the defect in the original proceeding. Id. (explaining that
4  there may be evidence in the record to which the ALJ can point to provide the requisite
5  specific and legitimate reasons for disregarding the testimony of a treating physician, or there
6  may not be, but either way, the ALJ is in a better position than the court to perform this task).
7  The Court therefore remands the decision for further proceedings consistent with this Order.

### C. The ALJ Failed to Support His Determination that Morganti Is Not Credible

Morganti argues that the ALJ improperly failed to consider that he performs his daily activities intermittently and therefore his ability to do so is not indicative of his ability to perform sustained work.[5] MSJ at 10. The Court assumes that Morganti is asserting that the ALJ erred in assessing his testimony's credibility. In assessing the credibility of Morganti's testimony regarding the intensity of his symptoms, and therefore his daily activity level, the ALJ must complete a two-step inquiry. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). First, the ALJ must determine if there is objective medical evidence of an impairment that could reasonably be expected to produce the alleged symptoms, and second, assuming that there is no evidence of malingering, the ALJ must provide specific, clear, and convincing reasons to reject Morganti's testimony regarding the severity of his symptoms. Id. In evaluating Morganti's testimony, the ALJ may use ordinary techniques of credibility evaluation, such as the claimant's reputation for lying or inconsistent statements, whether the claimant takes medication or undergoes treatment for symptoms, whether the claimant fails

---

[5] In Morganti's Reply, he asserts that he "does not believe the ALJ discredited his testimony rather he put more weight on the nontreating non examining medical expert testifying by telephone." Reply (dkt. 25) at 3. However, the Court assumes that Morganti is arguing in part that in placing more weight on the testimony of Dr. Skarloff, the ALJ erred in assessing Morganti's credibility regarding how his symptoms affected his daily activities, i.e., that he can only complete his daily activities "interspersed with rest." MSJ at 10. The Court finds Morganti's confusion understandable given that the ALJ's opinion states that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" but one sentence later says, "[i]n general, the undersigned finds the claimant to be credible but the laboratory reports reviewed by the medical expert indicate a lack of acute incidents and thus make the medical expert's opinion more credible." See AR at 55.

12

to follow a prescribed course of treatment, whether the alleged symptoms are consistent with the medical evidence, the claimant's work record, and observations of treating and examining physicians, and other third parties.  See id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.  Smolen, 80 F.3d at 1284.

In proceeding through the two-step analysis, the ALJ found that Morganti's medical impairments could be expected to cause his alleged symptoms, but that his statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." AR at 55.  The ALJ provided two bases for his determination.  First, the ALJ stated that Morganti's daily activity level could not be objectively verified because the record lacks a completed Adult Function Report.  Id.  Second, the ALJ explained that even if Morganti's activities were as limited as he alleged, "it is difficult to attribute the degree of limitation to his medical condition, as opposed to other reasons, in view of the significant differences between the treating sources and the medical expert and other factors discussed in this decision." AR at 55.

The ALJ provided no indication of which symptom testimony he found not to be credible.  When discussing Morganti's testimony, the ALJ referred to Morganti's symptoms only by the terms "alleged symptoms" and "these symptoms." AR at 55.  He discredited them by concluding that they are "not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id.  Morganti testified that he suffered from fatigue, sore throats, anxiety, depression, loss of attention span, loss of memory, trouble sleeping, joint pain, and general body pain.  Id. at 28-34.  The ALJ failed to specifically refer to any symptom testimony, and instead only mentioned Morganti's testimony regarding his wife's responsibility for completing household chores and Morganti's ability to care for himself for a month without his wife's help.  Id.  The ALJ failed to properly address Morganti's symptom testimony prior to finding it not credible.

Even assuming that the ALJ's recitation of Morganti's daily activities sufficed for identification of symptom testimony, in that Morganti's symptoms presumably caused his limited daily activities, the ALJ failed to provide clear and convincing reasons for rejecting Morganti's testimony. The ALJ's first reason, that Morganti's daily activities cannot be objectively verified, is not persuasive. A claimant's subjective pain or fatigue testimony often cannot be objectively verified. See Fair v. Bowen, 885 F.2d 597, 601-02 (9th Cir. 1989) (explaining that pain is a subjective phenomenon and it is possible to suffer from disabling pain without objective medical evidence of such). The Ninth Circuit has made it clear that objective verification of such symptoms is not required to find a claimant's testimony credible. See id. ("it is improper as a matter of law for an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings") (internal citation omitted)); Reddick v. Chater, 157 F.3d 715, 722-24 (9th Cir. 1998) ("The Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). To the extent that the ALJ intended to discredit Morganti's limited daily activity testimony on the grounds that his actual activities are not objectively verifiable, as distinct from the underlying symptoms causing the limited activity, the Court disagrees. Morganti submitted letters from his sister, father, and wife also noting his difficulty in completing daily activities. AR at 185-187. That the ALJ failed to consider this lay witness testimony does not mean that no evidence exists that could verify Morganti's statements.

Finally, with respect to the ALJ's reliance on conflicting medical opinions as a basis for discrediting Morganti's testimony as to the degree of limitation stemming from his medical condition, an ALJ may properly consider the opinions of treating and examining physicians, as well as third parties. See Lingenfelter, 504 F.3d at 1040. But, if the ALJ finds the claimant's subjective testimony not to be credible, his findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected claimant's testimony on permissible grounds" and not arbitrarily. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc)). It is not

14

clear to the Court what specific "significant differences between the treating sources and the medical expert" the ALJ relies on, or, as mentioned above, what specific testimony he uses such differences to discredit. AR at 55. The ALJ mentions "laboratory reports reviewed by the medical expert" and suggests that these reports "indicate a lack of acute incidents," but does not specify to which reports he is referring. General findings are insufficient. See Reddick, 157 F.3d at 722.

Even assuming that the ALJ has provided a sufficiently specific reason to discredit Morganti's testimony, the medical expert's opinion alone is not clear and convincing evidence, given the ALJ's failure to address Morganti's treating physicians' opinions and the lay witness statements Morganti provided. See S.S.R. 96-97p at 3-4 (Cum. Ed. 1996), available at 61 Fed. Reg. 34,483, 34,485 (July 2, 1996) (requiring ALJs to consider "all of the evidence in the record" in assessing subjective symptom testimony). See, e.g., Lingenfelter, 504 F.3d at 1036-37 (finding the ALJ's reliance on an incorrect assertion that alleged symptoms were contrary to a consensus of the medical opinion and claimant's ability to work for nine weeks did not constitute clear and convincing reasons for rejecting subjective pain testimony). This is especially true in light of the ALJ's failure to provide specific and legitimate reasons to discredit Morganti's treating physicians' opinions in favor of the medical experts'. See Section III(B) supra.

The ALJ did not specify what parts of Morganti's symptom testimony he found not to be credible, nor did he provide specific, clear, and convincing reasons for discrediting Morganti's statements concerning the limiting effects of his symptoms and for therefore, concluding that the medical expert's opinion is more credible than Morganti's testimony. Moreover, the ALJ failed to consider many of the factors required by the Social Security Administration when assessing the credibility of a claimant's symptom testimony. See S.S.R. 96-97p at 3-4 (requiring ALJs to consider, inter alia, the "location, duration, frequency, and intensity of the pain or symptoms," the type, dosage and effectiveness of any medications, any other treatment measures used for relief, and the diagnosis and prognosis of treating and examining physicians as well as other medical sources). Because the ALJ did

15

not did not provide specific, clear, and convincing reasons for discrediting Morganti's symptom testimony, substantial evidence does not support his Residual Functional Capacity assessment. Thus, the Court remands the decision to provide the ALJ an opportunity to readdress and properly support his credibility determination.

### D. The ALJ Erred By Failing to Consider Lay Witness Evidence

Morganti also argues that the ALJ improperly rejected the testimony of his father, sister and wife when deciding that Morganti had the ability to work. MSJ at 10-11. The Commissioner acknowledges that the ALJ failed to consider the lay witness testimony, but asserts that the error was harmless. Opp'n (dkt. 24) at 7-8. An ALJ must consider lay witness testimony as to how an impairment affects a claimant's ability to work and may not disregard it "without comment." Molina, 674 F.3d at 1114 (internal citations omitted). The ALJ failed to mentioned the lay witness testimony Morganti provided. Because the Court remands this case on other grounds, it need not reach the question of whether the ALJ's failure to consider the lay witness evidence was harmless. The Court instructs the ALJ to consider the lay witness testimony on remand.

### E. The ALJ's Finding Regarding Morganti's Ability to Work

Morganti further contends that the ALJ erred in his determination that Morganti was able to preform his past work as an activity director and dispatcher because the ALJ never asked the vocational expert hypothetical questions based on the medical records, and because his finding that Morganti can perform sustained work activities is not supported by substantial evidence. MSJ at 12-13. The Commissioner asserts that the ALJ's finding was proper based on his Step Four determination that Morganti was not disabled. Opp'n at 9. Additionally, the Commissioner argues that the ALJ is not required to ask hypothetical questions based on medical opinions he has rejected and that Plaintiff has failed to meet his burden in showing he can no longer perform his past relevant work. Id. at 9-10. The Court need not reach the merits of these arguments because it finds that the ALJ erred in its determination of Morganti's RFC at Step-Four, and therefore, substantial evidence does not support the ALJ's Step-Five determination. See Ligenfelter, 504 F.3d at 1041 ("Nor does

16

substantial evidence support the ALJ's step-five determination, since it was based on this erroneous RFC assessment."). Thus, the Court remands this case for proper determination of Morganti's RFC and a Step-Five work determination based thereon.

### F. Additional Evidence Submitted on Appeal

Morganti argues that the Appeals Council failed to discuss the new evidence he provided from Doctors Bricca and Heitner in its "boiler plate denial," and thus the case should be reversed or remanded for appropriate consideration of this evidence. MSJ at 14. The Commissioner contends that the new evidence Morganti submitted to the Appeals Council is immaterial. Opp'n at 10. To be clear, this Court does not have jurisdiction to "review a decision of the Appeals Council denying a request for review of an ALJ's decision, because the Appeals Council decision is a non-final agency action." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). However, because the Court remands the decision for further administrative proceedings, and the new evidence submitted to the Appeals Council is part of the administrative record, id. at 1162, the Court instructs the ALJ to consider the new evidence when it considers the record as a whole on remand.

## IV. CONCLUSION

Based on the foregoing, the Court AFFIRMS in part and REMANDS the decision for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: April 24, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE